

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# 13-20108-CR-ROSENBAUM/MATTHEWMAN

Case No.

18 U.S.C. § 371
18 U.S.C. § 1001(a)(2)
2 U.S.C. § 441a(a)(1)(A)
2 U.S.C. § 441a(f)
2 U.S.C. § 441g
2 U.S.C. § 437g(d)(1)(A)(i)

UNITED STATES OF AMERICA

vs.

JUSTIN LAMAR STERNAD,

**Defendant.**

_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

The Federal Election Commission
and Regulation of Federal Elections

1.      The Federal Election Campaign Act of 1971, as amended, Title 2, United States Code, Sections 431 through 455 (the "Election Act"), was a federal statute that was enacted to regulate federal election campaigns. The Election Act established the Federal Election Commission (FEC), an agency of the executive branch of the Government of the United States responsible for the administration and civil enforcement of the federal election and campaign finance laws.

2.      Among the purposes of the Election Act was the identification and disclosure of all

persons and entities making contributions to candidates for federal office, the enforcement of limitations on the amount of such contributions, the prohibition against the receipt of contributions by any candidate or candidate's committee from corporate sources, the prohibition of contributions in excess of twenty-five hundred dollars ($2,500) by any individual to any candidate or candidate's committee per federal election (in 2012), and the prohibition of contributions in excess of one hundred dollars ($100) in United States currency by any individual to any candidate or candidate's committee per federal election (in 2012).

3.      The Election Act's contribution limits applied to anything of value provided for the purpose of influencing the Congressional election, including (a) contributions to a candidate and his/her campaign, and (b) expenditures made in cooperation, consultation, or concert, with, or at the request or suggestion of, a candidate or his/her campaign.

Federal Election Reporting Requirements

4.      In order to implement the above provisions, the Election Act requires the principal campaign committee of a candidate to file periodic campaign finance reports with the Federal Election Commission setting forth information concerning the source and expenditure of any campaign contributions.  The required information was to be submitted by the Treasurer of the principal campaign committee to the Federal Election Commission on a FEC Form 3, entitled Report of Receipts and Disbursements for an Authorized Committee and attached Schedules, hereinafter referred to as "FEC Form 3".

5.      The FEC Form 3 specifically required the true and accurate identification of all contributors and the amount of such contributions, and the true and accurate identification of all recipients of any campaign expenditures and the amount of such expenditures.  The FEC Form 3

2

further required a true and accurate identification of the source and amount of any loans to the campaign.

6.     The FEC Form 3s were made available to the public by the Federal Election Commission. These reports were intended to provide a transparent record of the source and amount of any contributions and the recipients and amounts of any disbursements.

### The Candidacy of Justin Lamar Sternad

7.     Defendant JUSTIN LAMAR STERNAD was a candidate in the Democratic Party primary election for Florida's 26th Congressional District which was held on August 14, 2012.

8.     On or about May 15, 2012, defendant JUSTIN LAMAR STERNAD signed a FEC Form 2 Statement of Candidacy and designated the "Justin Sternad for Congress" committee as his principal campaign committee for the Democratic Party primary election for Florida's 26th Congressional District. On or about July 10, 2012, defendant JUSTIN LAMAR STERNAD signed a second FEC Form 2 Statement of Candidacy and designated the "Lamar Sternad for Congress" committee as his principal campaign committee for the Democratic Party primary election for Florida's 26th Congressional District.

9.     Defendant JUSTIN LAMAR STERNAD was the Treasurer of the authorized campaign committees entitled "Justin Sternad for Congress" and "Lamar Sternad for Congress," both operating under FEC identification number C00505529.

### COUNT 1
Conspiracy to Commit an Offense Against the United States
(18 U.S.C. § 371)

1.     The "General Allegations" portion of this Information is realleged and incorporated by reference as if fully set forth herein.

3

2.      From an unknown date but at least as early as in or about April 2012 until on or about August 29, 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**JUSTIN LAMAR STERNAD,**

did knowingly and willfully combine, conspire, confederate, and agree with others to commit and cause to commit an offense against the United States, that is, to knowingly and willfully: (1) in a matter within the jurisdiction of the executive branch of the United States, make a materially false, fictitious, and fraudulent statement, in violation of 18 U.S.C. § 1001(a)(2); (2) provide contributions to the "Justin Sternad for Congress" committee and the "Lamar Sternad for Congress" committee in excess of the limits of the Election Act, in violation of Title 2, United States Code, Sections 441a(a)(1)(A), and 441g; and (3) accept contributions to the "Justin Sternad for Congress" committee and the "Lamar Sternad for Congress" committee in excess of the limits of the Election Act, in violation of Title 2, United States Code, Sections 441a(f), 441a(a)(1)(A), and 441g; which contributions, both provided and accepted, in calendar year 2012 exceeded the limits of the Election Act by $25,000 or more, in violation of Title 2, United States Code, Section 437g(d)(1)(A)(i).

## OBJECTIVE OF THE CONSPIRACY

3.      The objective of the conspiracy was: to conceal the true source of the funds which were used by the political campaign of defendant JUSTIN LAMAR STERNAD during the Democratic Party primary contest of 2012 for Florida's 26th Congressional District; to secretly provide contributions in excess of the limits prescribed by the Election Act; to secretly accept contributions in excess of the limits prescribed by the Election Act; and to conceal the existence of the conspiracy and the violations of the laws of the United States.

4

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which defendant JUSTIN LAMAR STERNAD and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

4.      Cash and third party checks were utilized to conceal the source and amount of contributions that were made to the campaign.

5.      False and misleading FEC Form 3s were composed and filed with the Federal Election Commission in order to conceal the true source, amount, and nature of the funds used by the campaign.

## OVERT ACTS

In furtherance of this conspiracy, and to accomplish its objective, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

April 1, 2012 - June 30, 2012
<u>Initial Cash Contribution</u>

6.      On or about May 25, 2012, a co-conspirator hand-delivered $500, in cash, to JUSTIN LAMAR STERNAD, of which $300 was subsequently deposited into the account of "Justin Sternad for Congress", account number xxx-xxx1570.

7.      On or about July 10, 2012, defendant JUSTIN LAMAR STERNAD signed and mailed a FEC Form 3 to the Federal Election Commission on behalf of the "Justin Sternad for Congress" committee but failed to report the aforementioned cash contribution which was received on or about May 25, 2012.  Instead, defendant JUSTIN LAMAR STERNAD falsely claimed the

5

aforementioned cash contribution was a loan from his personal funds to the "Justin Sternad for Congress" committee.

Qualifying Fee Contributions

8.       On or about June 7, 2012, a deposit of $5,000, in cash, was made into the account of "Justin Sternad for Congress", account number xxx-xxx1570, at a TD Bank branch.

9.       On or about June 8, 2012, a deposit of $5,500, in cash, was made into the account of "Justin Sternad for Congress", account number xxx-xxx1570, at another TD Bank branch.

10.       On or about June 8, 2012, check number 301, payable to the Department of State, in the amount of $10,440, drawn on the account of "Justin Sternad for Congress", account number xxx-xxx1570 at TD Bank was provided to the Florida Department of State - Division of Elections with the notation "Qualifying Fee 2012."

11.       On or about July 10, 2012, defendant JUSTIN LAMAR STERNAD signed and mailed a FEC Form 3 to the Federal Election Commission on behalf of the "Justin Sternad for Congress" committee but failed to report a contribution of $5,000, in cash, which was received on June 7, 2012 and a contribution of $5,500, in cash, which was received on June 8, 2012 by the "Justin Sternad for Congress" committee, TD Bank account number xxx-xxx1570.   Instead, defendant JUSTIN LAMAR STERNAD falsely claimed the aforementioned cash contributions were loans from his personal funds to the "Justin Sternad for Congress" committee.

Name Change of the Principle Campaign Committee

12.       On or about July 10, 2012, defendant JUSTIN LAMAR STERNAD signed another FEC Form 2 Statement of Candidacy which amended his previously filed FEC Form 2 and designated the "Lamar Sternad for Congress" committee as his principal campaign committee for

6

the Democratic Party primary election for Florida's 26th Congressional District.

July 1, 2012 - July 25, 2012<br>Contribution for Car Rental

13.     On or about July 2, 2012, a co-conspirator deposited $1,060, in cash, into the account of Justin Sternad, account number xxxxxx4360, at Wells Fargo Bank, N.A.

14.     On or about July 2, 2012, defendant JUSTIN LAMAR STERNAD rented a motor vehicle from Enterprise Rent-A-Car to be used in his campaign for the Democratic Party primary election for Florida's 26th Congressional District.

Contributions for Printing & Mailing

15.     On or about July 14, 2012, co-conspirators met with a graphic designer to develop flyers for the political campaign of defendant JUSTIN LAMAR STERNAD.

16.     On or about July 15, 2012, co-conspirators met, again, with the graphic designer to develop flyers for the political campaign of defendant JUSTIN LAMAR STERNAD.

17.     While working together during the weekend of July 14-15, 2012, a co-conspirator hand-delivered $2,600, in cash, to the graphic designer for the designer's work in developing the flyers.

18.     On or about July 23, 2012, a co-conspirator hand-delivered $10,000, in cash, to Inkpressions, Inc. d/b/a Expert Printing & Graphics, the printer of the aforementioned flyers.

19.     From on or about July 17, 2012 through on or about July 24, 2012, approximately $15,901.35, in cash, was delivered to Rapid Mail & Computer Service, Inc. for their services in mailing the aforementioned flyers.

20.     On or about July 31, 2012, defendant JUSTIN LAMAR STERNAD signed and

7

mailed a FEC Form 3 on behalf of the "Lamar Sternad for Congress" committee to the Federal Election Commission but failed to report the aforementioned contributions which were received between July 1, 2012 and July 25, 2012.

July 26, 2012 - August 17, 2012
<u>Contributions for Printing & Mailing</u>

21.     On or about August 2, 2012, a co-conspirator provided $5,000, in cash, to Inkpressions, Inc. d/b/a Expert Printing & Graphics.

22.     From on or about August 2, 2012 through on or about August 8, 2012, approximately $22,100, in cash, was delivered to Rapid Mail & Computer Service, Inc. for their services in mailing the aforementioned flyers.

23.     On or about August 9, 2012, a co-conspirator hand-delivered check number 8939, in the amount of $13,824.85, payable to Expert Printing, drawn on account xxxxxx-9803 at BankUnited, to Inkpressions, Inc. d/b/a Expert Printing & Graphics.

24.     On or about August 9, 2012, at the request of a co-conspirator, Inkpressions, Inc. d/b/a Expert Printing & Graphics issued check number 9998, in the amount of $9,000, payable to Rapid Mail, which was subsequently delivered to Rapid Mail & Computer Service, Inc.

25.     On or about August 17, 2012, defendant JUSTIN LAMAR STERNAD signed and mailed a FEC Form 3 on behalf of the "Lamar Sternad for Congress" committee to the Federal Election Commission but failed to report the aforementioned contributions which were received between July 26, 2012 - August 17, 2012.   Instead, defendant JUSTIN LAMAR STERNAD falsely claimed the aforementioned contributions were loans from his personal funds to the "Lamar Sternad for Congress" committee.

8

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
False Statement
18 U.S.C. § 1001(a)(2)

1.      The "General Allegations" portion of this Information is realleged and incorporated by reference as if fully set forth herein.

2.      On or about August 17, 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### JUSTIN LAMAR STERNAD,

in a matter within the jurisdiction of the executive branch of the United States, knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation in that the defendant represented on a FEC Form 3 filed on behalf of the "Lamar Sternad for Congress" committee with the Federal Election Commission that he had made loans in the amount of $63,801.70 from his personal funds to the "Lamar Sternad for Congress" committee when as the defendant well knew and believed that he had loaned less than $300.00 from his personal funds to the "Lamar Sternad for Congress" committee.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT 3
Illegal Campaign Contributions
2 U.S.C. §§ 441a(a)(1)(A), 441a(f), and 437g(d)(1)(A)(i)

1.      The "General Allegations" portion of this Information is realleged and incorporated by reference as if fully set forth herein.

2.      During calendar year 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

9

**JUSTIN LAMAR STERNAD,**

while a candidate for federal office, knowingly and willfully accepted contributions in excess of the

limits of the Federal Election Campaign Act, which aggregated at least $25,000.

In violation of Title 2, United States Code, Sections 441a(a)(1)(A), 441a(f), and

437g(d)(1)(A)(i) and the regulations promulgated thereunder.

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY


_____
THOMAS J. MULVIHILL
SENIOR LITIGATION COUNSEL
UNITED STATES ATTORNEY'S OFFICE


_____
RICHARD C. PILGER
PUBLIC INTEGRITY SECTION
DEPARTMENT OF JUSTICE

10

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

JUSTIN LAMAR STERNAD,

               Defendant.

_____/

CASE NO. _____

# CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)

| | |
|---|---|
| X | Miami _____ Key West _____ |
| _____ | FTL _____ WPB _____ FTP |

New Defendant(s)      Yes _____  No _____
Number of New Defendants _____
Total number of counts _____

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:   (Yes or No)   No_____
     List language and/or dialect   _____

4.    This case will take   _0_   days for the parties to try.

5.    Please check appropriate category and type of offense listed below:

    (Check only one)                     (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | 0 | Petty | | _____ |
| II | 6 to 10 days | _____ | Minor | | _____ |
| III | 11 to 20 days | _____ | Misdem. | | _____ |
| IV | 21 to 60 days | _____ | Felony | | X |
| V | 61 days and over | _____ | | | |

6.    Has this case been previously filed in this District Court? (Yes or No)   No_____
If yes:
Judge: _____   Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?   (Yes or No)   No_____
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____   District of _____

Is this a potential death penalty case? (Yes or No)   No_____

7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes   No_ No

8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____ Yes   No_ No

                          *Thomas J. Mulvihill*
                          _____
                          Thomas J. Mulvihill
                          ASSISTANT UNITED STATES ATTORNEY
                          Florida Bar No./Court 0931209

*Penalty Sheet(s) attached                                           REV 4/8/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: Justin Lamar Sternad

**Case No**: _____

Count #: 1

  Conspiracy to make a false statement and violate the Federal Election Campaign Act

  Title 18, United States Code, Section 371

**\* Max. Penalty:**  Five years' imprisonment, three years' supervised release, and $250,000 fine.

Count #: 2

  False Statement

  Title 18, United States Code, Section 1001(a)(2)

**\* Max. Penalty:** Five years' imprisonment, three years' supervised release, and $250,000, fine.

Count #: 3

  Illegal Campaign Contributions

  Title 2, United States Code, Sections 441a(a)1(A), 441a(f), and 437g(d)(1)(A)(i)


**\* Max. Penalty:** Five years' imprisonment, three years' supervised release, and $250,000, fine.

**\*Refers only to possible term of incarceration, supervised release, and fine; does not include possible restitution, special assessments, parole terms or forfeitures that may be applicable.**